Citation Nr: 1126168 
Decision Date: 07/12/11 Archive Date: 07/19/11

DOCKET NO. 07-08 075 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Whether new and material evidence has been submitted to reopen a claim of entitlement to service connection diabetes mellitus, and if so, whether service connection should be granted. 

2. Entitlement to an initial compensable evaluation for bilateral hearing loss disability.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARINGS ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

J. Barone, Counsel


INTRODUCTION

The Veteran had active service from July 1964 to July 1968.

This matter comes before the Board of Veterans' Appeals (Board) from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

The Veteran has testified on two occasions during the course of his appeal. He was afforded a hearing before a Veterans Law Judge at the RO in June 2008. He was also afforded a hearing before the undersigned Veterans Law Judge at the Board's offices in Washington, DC in March 2011. Transcripts of both hearings have been associated with the record.

The Board notes that following the issuance of a supplemental statement of the case in August 2010 the Veteran submitted additional evidence. At his March 2011 hearing he waived review of this evidence by the agency of original jurisdiction (AOJ). See 38 C.F.R. § 20.1304(c).

The Board observes that service connection for left ear hearing loss disability was granted in a November 2006 rating decision. A noncompensable evaluation was assigned. The November 2006 rating decision also denied service connection for right ear hearing loss disability. The Veteran appealed the initial rating of his left ear hearing loss disability and the denial of service connection for the right ear. In May 2010, while the appeal was in remand status, the RO granted service connection for right ear hearing loss disability and recharacterized the issue as the evaluation of bilateral hearing loss disability. As such, the Board has characterized the issue as stated above.

The issue of entitlement to a higher initial evaluation for bilateral hearing loss disability is addressed in the REMAND portion of the decision below and is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC.


FINDINGS OF FACT

1. In an October 2004 rating decision, entitlement to service connection for diabetes mellitus was denied; the appellant submitted a notice of disagreement but did not submit a timely substantive appeal.

2. The evidence received since the October 2004 rating decision is not cumulative or redundant of evidence previously of record, and raises a reasonable possibility of substantiating the claim.

3. Diabetes mellitus is presumed to have been incurred service.


CONCLUSIONS OF LAW

1. The October 2004 rating decision is final. 38 U.S.C.A. §§ 7104, 7105 (West 2002); 38 C.F.R. §§ 3.160(d), 20.1100, 20.1103, 20.1104 (2010).

2. New and material evidence has been received to reopen the claim of entitlement to service connection for diabetes mellitus. 38 U.S.C.A. § 5108 (West 2002); 38 C.F.R. § 3.156 (2010).

3. Diabetes mellitus was incurred in service. 38 U.S.C.A. §§ 1110, 1112, 1113, 1137, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2010).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010). In light of the Board's reopening and granting of the Veteran's claim of entitlement to service connection for diabetes mellitus, further discussion of VA's duties to notify and assist with respect to this issue is not required.

Analysis

Entitlement to VA compensation may be granted for disability resulting from disease or injury incurred in or aggravated by active duty. 38 U.S.C.A. §§ 1110 (wartime service), 1131 (peacetime service); 38 C.F.R. § 3.303. 

To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 
Service connection may be granted for any disease initially diagnosed after service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Generally, a claim which has been denied in an unappealed RO decision or an unappealed Board decision may not thereafter be reopened and allowed. 38 U.S.C.A. §§ 7104(b), 7105(c) (West 2002). The exception to this rule is 38 U.S.C.A. § 5108, which provides that if new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim. 

New evidence means existing evidence not previously submitted to agency decisionmakers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a). 

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence, although not its weight, is to be presumed. Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

As noted, the RO denied service connection for diabetes mellitus in an October 2004 rating decision. The RO determined that there was no evidence of exposure to herbicides or that the Veteran was diagnosed with diabetes during service or within one year of discharge. 

The evidence of record at the time of the October 2004 rating decision included the Veteran's DD Form 214 indicating that he served in the U.S. Air Force as an airframe repairman and that he had 11 months and 23 days of foreign service. 

The evidence of record also included copies of Board decisions regarding other Veterans and addressing the possibility such individuals were exposed to herbicides at sites in Thailand. The Veteran also submitted evidence regarding the use of herbicides by the Department of Defense in various locations, as well as a report discussing the use of Agent Orange in Laos. An electronic message from the Navy Department Library indicates that during the Vietnam War Tan Son Nhut was the busiest airport in the world, and that shuttle flights stopping at a series of airports in the region were very common. The author stated that a direct line flight between Okinawa and Bangkok would not have been authorized because it would have crossed into hostile airspace.

In an April 2004 electronic message, in response to the Veteran's request for information concerning personnel being sent from Ubon Air Base, a retired Air Force member stated that he took a crew from the 8th Fighter Maintenance Squadron to Dong Ha via DaNang in September 1967 to salvage engines from aircraft. 

In a November 2003 statement, a retired Air Force officer stated that he was the Military Airlift Command (AMC) Route Briefing Officer in 1966 and 1967 for the MAC Command Post at Kadena Air Base, Japan, and that it was common for military aircraft flying to and from air bases in Thailand to land at Tan Son Nhut or other airbases in Vietnam. 

In a June 2004 statement, the Veteran indicated that enroute to Thailand in November 1966 his flight stopped at Tan Son Nhut, that he deplaned, and that he was there for several hours before proceeding to Bangkok. He also stated that he sustained an eye injury in the summer of 1967 and that he was sent to Clark Air Force Base via Saigon. He stated that on the return flight, his C-130 stopped in Saigon and that he was there for several hours. 

Evidence added to the record since the October 2004 rating decision includes a September 2006 statement by the Veteran regarding his time in the Air Force. He noted that his travel orders to Thailand in November 1967 included stops at Travis Air Force Base in California; Las Vegas, Nevada; Anchorage, Alaska; Yokohama, Japan; Tan Son Nhut, Vietnam; Bangkok, Thailand, and finally Ubon, Thailand. He stated that he did deplane at Tan Son Nhut. He also stated that he sustained an eye injury at Ubon and was eventually transferred to Clark Air Force Base. He noted that his route took him via DaNang. He stated that he was transferred from Clark to Tachikawa, Japan where he received treatment. 

The Veteran submitted statements by various individuals attesting to use of herbicides at bases in Thailand. These statements indicate that perimeters of bases and areas around flight lines were defoliated.

Also added to the record are transcripts of two Board hearings. At his first hearing in June 2008, the Veteran testified regarding the route he took to reach Thailand. He noted that he flew aboard a contract carrier he believed was Trans World Airlines, and that it landed in Saigon. He described the offloading of cargo. He noted that he and others deplaned and went inside a building where they waited for the aircraft to depart. He also stated that he flew aboard a C-130 to Saigon enroute to Clark Air Force Base to receive treatment for an eye injury. 

At his March 2011 hearing the Veteran testified that he was exposed to herbicides during his time in Thailand and also as the result of lay-overs in Vietnam. 

In conjunction with his hearing the Veteran also submitted binders containing various materials.

Having carefully reviewed the record, the Board concludes that new and material evidence sufficient to reopen the claim has been submitted. As noted, the October 2004 decision concluded that the evidence did not support a finding of exposure to herbicides. The newly submitted evidence addresses that basis of denial and provides additional details regarding the possibility of exposure that were not of record at the time of the October 2004 rating decision. As such, the claim of entitlement to service connection for diabetes mellitus is reopened. 

With respect to the question of service connection, the Board observes that if a Veteran was exposed to an herbicide agent during active military, naval, or air service, the following diseases shall be service connected if the requirements of 38 U.S.C.A. § 1116; 38 C.F.R. § 3.307(a)(6)(iii) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 U.S.C.A. § 1113; 38 C.F.R. § 3.307(d) are also satisfied: chloracne or other acneform diseases consistent with chloracne, Type 2 diabetes mellitus, Hodgkin's disease, ischemic heart disease, all chronic B-cell leukemias, multiple myeloma, non-Hodgkin's lymphoma, Parkinson's disease, acute and subacute peripheral neuropathy, porphyria cutanea tarda, prostate cancer, respiratory cancers (cancer of the lung, bronchus, larynx, or trachea), and soft-tissue sarcomas (other than osteosarcoma, chondrosarcoma, Kaposi's sarcoma, or mesothelioma). 38 C.F.R. § 3.309(e).

In this context, "herbicide agent" is defined as a chemical in an herbicide used in support of the United States and allied military operations in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6).

A Veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the Veteran was not exposed to any such agent during that service. The last date on which such a Veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he served in the Republic of Vietnam during the Vietnam era. "Service in the Republic of Vietnam" includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). In this case, the Board finds that the Veteran's reports of visitation in Vietnam are credible. As such, he is presumed to have been exposed to herbicide agents. Moreover, the Veteran has a diagnosis of diabetes mellitus. In the absence of affirmative evidence showing that diabetes mellitus was not incurred in service, the Board concludes that the presumption applies and that service connection is warranted.


ORDER

New and material evidence having been submitted, the petition to reopen the claim of entitlement to service connection for diabetes mellitus is granted.

Entitlement to service connection for diabetes mellitus is granted.


REMAND

As noted, the Veteran is currently service connected for bilateral hearing loss disability. He was most recently examined in November 2008. At his 2011 hearing, he suggested that his hearing loss disability had worsened. As such, the Board finds that a current examination is warranted.

In light of the above discussion, the Board has determined that additional development is necessary. Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the current severity of his bilateral hearing loss disability. Any and all studies, tests and evaluations deemed necessary by the examiner should be performed (including audiological testing), and the results reported in detail. The claims file and a copy of this remand should be provided to the examiner for review. The examiner should elicit a complete history from the Veteran, the pertinent details of which should be included in the examination report. 

The examiner should specifically describe the effect of the Veteran's hearing loss disability on his occupational functioning and daily activities. 

Complete rationale for all opinions expressed should be included in the examination report.

2. The Veteran is hereby notified that it is his responsibility to report for any examination, and to cooperate in the development of the claim. The consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655.

3. Readjudicate the Veteran's claims, with application of all appropriate laws, regulations, and case law, and consideration of any additional information obtained as a result of this remand. If the decision remains adverse to the Veteran, he and his representative should be furnished a supplemental statement of the case and afforded an appropriate period of time within which to respond thereto.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other 
appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).






____________________________________________
MICHAEL LANE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs